Donahue, J.
There is no conflict of evidence in this record. Linndale Road intersects Set *81 tlement Road at right angles, and both of these roads are now streets within the village of Rockport much used for public travel. The railroad company originally constructed two main tracks across these streets at the point of intersection, and it is now proposed to locate five additional tracks, making in all seven tracks diagonally across these streets at this point. Mr. Costin, the superintendent of the plaintiff company, testified as follows: “Q. I wish you would state what necessity exists for the construction of these tracks over the crossing? A. Well, we could not operate the Linndale yard without those tracks; that is the necessity for it.” And upon cross-examination as follows: “Q. It is a question of the size of the yards then? A. Yes.” It, therefore, clearly appears from the evidence offered on behalf of the plaintiff in the court of insolvency that these tracks are to be used in connection with the Linndale yard, and not in the operation of the main line. This yard appears to have grown from a small beginning to large proportions extending now practically two miles to the east of Settlement Road, and containing a great many separate tracks and switches. In determining the right of the company to make this appropriation it is proper for a court to consider the purposes of railroad yards; the nature, character and use to which they are put, and whether such use is consistent with the present rights and easements of the public in the streets. The right of the railroad company to make this appropriation does not depend alone upon its authority to appropriate public streets to *82 the uses .of its road, but it also depends upon the nature of the property sought to be appropriated and the uses to which the railroad company seeks to subject that property. It must also be borne in mind that the state has already appropriated this land to public purposes, and it could not without first vacating these streets appropriate the same land to any use inconsistent with or destructive of the present rights of the public therein, and if the state itself could not, without first vacating and abandoning these streets, appropriate this property to a use that would be destructive of or a substantial interference with the public easement therein, then neither could it delegate to a railroad company any such right. The property having been devoted to a public purpose, the principle obtains that the public use is the dominant interest in the street, and the village authorities could not grant any right to the railroad company under the provision of Section 3283, Revised Statutes, that would be destructive of these rights or amount to a material or substantial interference with the same or have the effect of excluding the public therefrom. This proposition seems to be well settled in this state. The Lake Shore & Michigan Southern Railway Co. v. City of Elyria, 69 Ohio St., 414; Ravenna v. Pennsylvania Co., 45 Ohio St., 118; The Little Miami Railroad Co. v. Commissioners of Greene County, 31 Ohio St., 338; City of Zanesville v. Fannan, 53 Ohio St., 605; Railroad Co. v. Defiance, 52 Ohio St., 262. It necessarily follows that the railway company can acquire no further rights by appropriation than the village council could grant it by ordinance or contract.
*83 Section 3283, Revised Statutes, contemplates that a railroad track may be laid over or across a public highway, or a street in a municipal corporation without destroying or materially interfering with the easement of the public therein, but it certainly does not contemplate the multiplication of these tracks at the will and pleasure of the railroad company without reference to the condition of the road or street proposed to be crossed and the uses the railroad company intends to make of these tracks. An examination of the plat or diagram copied into the statement of facts herein shows a somewhat peculiar and extraordinary condition of affairs. This is not a question of crossing a single street at right angles, or even two streets at right angles, but the proposed appropriation contemplates the crossing of two streets diagonally at the point of their intersection.
Past experience with grade crossings in this state has shown the wisdom of the legislation declaring against grade crossings of any kind or character. True in this case the main tracks are already at grade and the statute that now prohibits grade crossings does not' apply to this case further than to permit under these circumstances additional tracks at grade. Section 6 of that act does not grant to railroad companies any new rights or authority whatever, but merely exempts from the operation of this act the right and authority a railroad company then had to lay additional tracks at grade.
If under the provision of Section 3283, Revised Statutes, the railroad company has the absolute *84 right to appropriate the public easement in these streets for these additional tracks, it would follow that it would have the right to appropriate for an unlimited number of tracks, if it desired to place the same there, without regard to the effect such appropriation would have upon the streets, or the rights of the public therein. This consideration alone demonstrates the unreasonableness of such construction, and leads us to the conclusion that the rights of the railroad company under this section are not absolute and at the will of the company but must be exercised with reasonableness and with due regard to the rights of the public therein, and it therefore follows that it is not only the province, but the duty, of a court in which such appropriation proceedings have been commenced to determine from all the evidence whether the number of tracks proposed to be constructed would be destructive of the public easement in the streets, or an unreasonable interference therewith. This was one of the questions submitted to the trial court. The evidence offered was not conflicting. That court found against the reasonableness of the appropriation and against the authority of the company to appropriate the right to lay these further tracks across these streets, and the finding and judgment of the trial court in these particulars is fully sustained by the evidence and is not contrary to law.
The court also found that the appropriation sought to be made is not necessary for the purpose of the plaintiff’s railroad. Section 3283, Revised Statutes, under favor of which these proceedings *85 were brought does not authorize the appropriation of streets for any and all purposes incident to the operation of a railroad, but only for the location of any part of the railroad itself. In this respect it differs materially from Section 3281 authorizing the appropriation of private property for depots, workshops, roundhouses and water stations. In the construction and location of the main line of road a railroad company cannot but meet with conditions that are beyond its control, as for instance the crossing of streets and highways and therefore, notwithstanding that the crossing of these streets and highways may interfere somewhat with the public travel by foot passengers and ordinary road vehicles, yet the legislature has recognized the fact that of necessity the railroad company must be given the right to cross the same, not merely because it also furnishes a mode of public travel, but because it would be impossible to construct railroads if such rights were not granted. But in the location and establishment of its yards, depots, workshops, roundhouses and water stations, the railroad company can largely guard against these contingencies and it is very evident that Section 3283, Revised Statutes, intends to require that it should do so, otherwise the language of that section would not be different from the language found in Section 3281, Revised Statutes. Section 3283 does not in terms authorize a railroad company to condemn or appropriate public streets or roads for these purposes, and all statutes granting to corporations the right of eminent domain, which is an attribute of *86 sovereignty, must be strictly construed. Currier v. M. & C. Railroad Company, 11 Ohio St., 228; Atkinson v. M. & C. Railroad Company, 15 Ohio St., 21; Platt v. Pennsylvania Company, 43 Ohio St., 228; Ravenna v. Pennslyvania Company, 45 Ohio St., 118. Without recourse to this rule of construction it clearly appears that Section 3283 applies only to the railroad itself if it should be found necessary in the location of the same or any part thereof. All these other things that are incident to and undoubtedly absolutely necessary to be maintained by a railroad company for the purposes of operating its road are not included in the term railroad as used in this section, for if depots, workshops, roundhouses and water stations could be constructed upon public streets, it would amount to an absolute abandonment and destruction of the public rights therein. It is equally clear that railroad yards are not within the contemplation of this statute, and that it is not intended thereby to authorize a railroad company to construct its yards over and across or along streets and highways, either with the consent of the municipal authorities or by appropriation of the same. Such a use by the railroad company would be not only inconsistent with the right of the public therein, but absolutely destructive of its rights. It ought to require no argument to sustain the proposition that a railroad yard is no place for public travel, either by pedestrians or ordinary road vehicles. If an attempt were made by the village authorities to establish a street over and across Linndale yards the absurdity would become at once apparent. It *87 would be not only a serious interference with the railroad's right in this property but practically destructive thereof, and the danger to the traveler would be so imminent and obstructions so frequent as to make it useless to the public. The evidence in this record does not admit of any other conclusion but that these tracks now proposed to be located across these streets are for yard purposes. The trial court found that the proposed tracks were not necessary to the operation of the road. The burden of proof upon this proposition was upon the railroad company. The proof offered was that these tracks were necessary to the operation of its yards. Of course it must be conceded that yards are a necessary incident to the operation of the road itself, but no more necessary than are depots, workshops, roundhouses and water stations. It is clear that the railroad company cannot appropriate streets for these purposes and it is equally clear that it cannot appropriate streets and public highways for yard purposes. Therefore, the proof offered that these tracks were necessary for yard purposes does not sustain the claim that the tracks are necessary, in the location of the road or any part thereof. It is of course unfortunate that this condition should arise. The company, perhaps, could not foresee the development of its yards to such an extent as would require the use of these streets for yard purposes, and all this valuable property ought not to be sacrificed for any mere technical right of the public, but the right of the public in these streets is not technical, but substantial. It is conceded in the record that these streets *88 are “much used for public travel.” Therefore, the only way the public can be divested of these rights is by vacation of the streets, and until that is done the courts must protect the easement of the public therein.
There is another question presented by this record, that in view of our construction of Section 3283, it is not now material, yet it is one of the preliminary questions to be determined before submitting the question of damages to a jury, and that is whether the railroad company has been unable to agree with the authorities of the village with reference to the occupation of these streets. The trial court made no finding upon this question and there was no competent evidence offered to the court upon which it might find this fact to be true. There is some evidence that Judge Lawrence, who is now an attorney of record in this cause, represented to counsel for the railroad company that the village of Rockport would not agree to any grade crossings. The conclusion of the witness that Mr. Lawrence was the authorized representative of the council of the village is not evidence tending to prove that fact. The council of the village of Rockport was the proper authority to declare its position. The proposition should be made to the council of the village and rejected by it, or there should be some showing in this record that the council by proper action on its part directed Mr. Lawrence to communicate to the railroad company its final rejection of any .proposition made by the company to lay these tracks over and upon these streets. In this respect the evidence of the rail *89 road company failed to establish the fact that it had been unable to agree with the village authorities. There is considerable controversy in the record as to this proposition, but none is now made in this court and we-would probably not reverse for this reason. ' But the fact remains that there was no finding by the court upon this preliminary question and no evidence offered upon which the court would be authorized to find the averment of the plaintiff’s petition in that behalf to be true.
For the reasons, however, first above stated the judgment of the circuit court is reversed and the judgment of the common pleas court affirming the judgment of the Court of Insolvency of Cuyahoga county is affirmed.

Judgment reversed.

Spear, C. J., Price, and Johnson, JJ., concur.